IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| J.B., B/N/F LAUREN AND ERIC B., | § § | |
| Plaintiff, | § § | Civil Action No. _____ |
| vs. | § § | |
| FRISCO INDEPENDENT SCHOOL DISTRICT, | § § § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff J.B. represented here by next friend Lauren and Eric B., his parents ("Mr. and Mrs. B.")[1], was a student in the Frisco Independent School District ("Frisco ISD") and resides in the Frisco ISD attendance zone. He files this Original Complaint against Frisco ISD respectfully stating as follows:

## I.
## PRELIMINARY STATEMENT

J.B. is a student, currently in fourth grade, who has a disability and was assigned by Frisco ISD to Hosp Elementary ("Hosp") for the 2015-2016, 2016-2017, 2017-2018, 2018-2019 school years. Despite the pleas of his parents giving notice to Frisco ISD of his serious disabilities, Frisco ISD failed to acknowledge and then accommodate J.B.'s disability. Such caused him to have behavioral struggles in the general education setting in which Frisco ISD placed him. Frisco ISD's failure to provide J.B. with the services and supports he needed caused his behavioral problems to escalate and his self-esteem to plummet. By December of the 2018-2019 school year, J.B. had

---

[1] Plaintiff is a minor with a disability who is entitled to have his identity protected. Defendant is aware of his identity. He was the Petitioner in Docket No. 180-SE-0219 brought against Frisco Independent School District.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                    Page 1 of 17

been so traumatized by his treatment and restraints at Frisco ISD's Hosp Elementary School (hereinafter "Hosp") that he was no longer able to attend school there and his parents withdrew him from Frisco ISD and enrolled him at St. Timothy Christian Academy, a private school dedicated solely to serving students with disabilities who are not able to successfully participate in the public school general education environment. By failing to provide J.B. with a free appropriate public education ("FAPE"), Frisco ISD violated the Individuals with Disabilities Act ("IDEA") and Section 504 of the Rehabilitation Act ("Section 504").

## II.
## PARTIES

1. Plaintiff J.B and his parents, Lauren and Eric B. are residents of Frisco, Denton County, Texas zoned for the Frisco ISD.

2. Defendant Frisco ISD is a political subdivision of the State of Texas with its administrative offices at 5515 Ohio Drive, Frisco, Texas 75035 where it may be served with process through its superintendent, Dr. Mike Waldrip.

## III.
## JURISDICTION & VENUE

3. This Court has jurisdiction over this proceeding pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(A) and Section 504, 29 U.S.C. § 701.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On February 13, 2019, Plaintiff filed a request for an impartial due process hearing pursuant to the IDEA. The due process hearing was assigned Docket Number 180-SE-0219. On August 23, 2019, Special Education Hearing Officer Kasey White (the "SEHO") filed the Decision of the Hearing Officer (the "Decision") finding that Frisco ISD provided J.B. with a free

appropriate public education and denying Plaintiff's claims under Section 504 of the Americans with Disability Act "ADA" as outside her jurisdiction. Thus, Plaintiff has done all he can to exhaust his administrative remedies.

## V.
## FACTS APPLICABLE TO ALL COUNTS

6. J.B. is a very bright student who performs at or above grade-level and was in the gifted and talented program at Hosp. However, throughout his brief school career at Hosp, J.B. struggled with behavior issues. Even before J.B. began Kindergarten in 2015 at Hosp, J.B.'s parents were concerned about J.B. His mother requested a meeting with the counselor at Hosp and informed the counselor that during the summer, J.B. had been self-harming and expressing suicidal thoughts. Rather than evaluate J.B. for a disability and put a Section 504 plan in place, the counselor merely agreed to "check in with him." The policies and procedures of Frisco ISD specify that a parent can raise Section 504 issues, and once raised, Frisco ISD is obligated to evaluate and address them in a timely manner. The record indicates that Frisco ISD did neither.

7. As early as first grade, school personnel observed J.B. engage in self-harming behaviors. J.B. was struggling with depression, anxiety, hitting himself in the head and hitting his head on the wall. His first grade teacher reported that he became very upset and was throwing things. These behaviors were happening daily. In first grade, J.B. had his first incident of aggression toward another student with whom he had a disagreement. Yet, despite J.B.'s parents raising Section 504 issues in kindergarten, and Frisco ISD personnel's first-hand awareness of these issues from his conduct in the classroom, Frisco ISD did nothing to evaluate J.B. for any disability or put a Section 504 plan in place.

8. As J.B. started second grade, his parents noticed that he was not maturing and that problems with fine motor skills, which had been noticed by his teachers in Kindergarten, still

existed and were not improving. J.B. continued to experience behavior problems at the start of second grade, pushing another student and screaming at a teacher. Despite a recommendation from the Hosp Principal, Mr. Else, that J.B. receive a 504 plan at the beginning of second grade, nothing was done to put a 504 plan in place. The school counselor decided apparently on her own, not to evaluate J.B. until the end of second grade – a completely unjustified delay that caused significant harm to J.B. Further, the school counselor did not inform J.B.'s parents of her decision to delay an evaluation and it was only when they asked for a copy of his 504 plan did they discover that no plan had been implemented.

9. Upon discovering the counselor's decision to delay an evaluation, J.B.'s parents urged that an evaluation proceed. During the fall of 2017, for the first time, Hosp conducted what it describes as a Section 504 evaluation and determined that J.B. was eligible for a 504 plan that included a long list of accommodations, including allowing J.B. to talk with the school counselor as needed. The 504 evaluation dated November 29, 2017 noted that "J.B. has difficulty regulating his emotions and calming himself when frustrated." By now, J.B. was halfway through second grade continuing to suffer from a problem his parents brought to Frisco ISD's attention before the start of kindergarten.

10. In January of 2018, J.B.'s parents arranged for an outside evaluation of J.B. As a result of the evaluation, the examiner diagnosed J.B. with Asperger's Syndrome, ADHD, Major Depressive Disorder, Single Episode in Partial Remission, Dysgraphia and Provisional Avoidant/Restrictive Food Intake Disorder. Upon receipt, J.B.'s parents provided the evaluation to Hosp personnel. The report identified J.B.'s behavioral struggles and recommended that he be qualified for special education services. The report also recommended a behavior modification plan based on research-based Applied Behavior Analysis. The report states, "punishment and punitive consequences will likely not be effective for J.B." These recommendations were 2 of

14 directed specifically at his school. Despite the detailed diagnosis of J.B.'s serious conditions and emotional needs, nothing changed for J.B. at Hosp other than that Frisco ISD began its own further evaluation termed a Full Individual Evaluation "FIE" at the request of the 504 Committee. Ironically, during this time of "further evaluation" by Frisco ISD the diagnostic reports resulting from the outside evaluation conducted at the full expense of J.B.'s parents were accepted by FISD, but J.B. was still not provided a behavior modification plan despite the clear diagnosis and recommendations of Applied Behavior Analysis.

11. In February of 2018, as part of J.B.'s initial FIE, J.B.'s teacher identified significant behavior problems, including being disrespectful, refusing to follow directions, inability to handle his emotions and difficulty with peers. Also in February, J.B. had a significant behavioral incident involving a substitute teacher who resorted to physically restraining him. The substitute was not trained in the proper use of restraint. As a result of the incident, J.B. was further bullied by some of his classmates, which added to his trauma. The incident was directly related to the substitute teacher not following J.B.'s accommodations and Frisco ISD not taking his condition seriously for years despite parental notice and the observations of Frisco ISD's own personnel.

12. In early March, 2018, J.B. experienced one of his many behavioral problems in PE. J.B. was screaming and hitting because he was ruled "out" in a game. The PE teacher and other Hosp personnel were well aware that losing in a game often triggered J.B. to react negatively and his behavior problems to escalate. Despite these events, J.B. was still not provided any sort of behavior modification plan until the very end of March, 2018. At no time during J.B.'s second-grade year did Frisco ISD conduct a Functional Behavior Assessment or meet to include a Behavior Intervention Plan in J.B.'s 504 Plan. Rather, in the presence of other students, his second grade teacher publicly admonished him that he should go to another school.

13. As a result of the incidents in early March, approximately 30 months after being put on notice of Section 504 issues by J.B.'s parents, Frisco ISD decided to convene an ARD Committee and begin providing J.B. with special education services while it completed its assessment. On March 9, 2018, the ARD Committee had its initial meeting and agreed that J.B. qualified for services. In that initial meeting, the ARD Committee agreed to "business as usual" by simply carrying over behavior related accommodations from J.B.'s 504 Plan and to provide sensory breaks and take behavior data. The ARD Committee did not initiate a Functional Behavioral Assessment nor implement the recommendations for Applied Behavioral Analysis strategies, the outside evaluation secured at the full expense of J.B.'s parents and provided to the Frisco ISD.

14. FISD completed its initial Full Individual Evaluation "FIE" in April 2018 which did not include a Functional Behavioral Assessment. However, even absent this comprehensive behavioral component, the record of J.B.'s problems was so extensive that his FIE still found that J.B.'s behavior impeded his learning and that he "exhibited significant emotional, behavioral or attentional problems." On April 27, 2018, the ARD Committee convened to receive the results of the FIE and to revise J.B.'s IEP. Still, Frisco ISD did not initiate a Functional Behavior Assessment or provide a Behavior Specialist to evaluate J.B. or train his teachers on how to avoid triggering his outbursts and how to calm him when he did become agitated. Further, Frisco ISD did not train its teachers on how to employ the strategies recommended in the Applied Behavior Analysis. Meanwhile, up until the very last day of his second-grade year, J.B. experienced ongoing bullying as a result of his disability, some of which was precipitated by systematic and highly contra-indicated practices of Frisco ISD teachers and staff of focusing negative attention on J.B. in the presence of other children. This further added to his behavioral struggles.

15.     Prior to the start of J.B.'s third-grade year, J.B.'s parents requested a meeting of the ARD Committee to prepare for the coming school year. The ARD Committee met on August 10, 2018. Ms. B. requested that, based upon J.B.'s prior struggles in PE and recess, J.B. be provided with special education support during those times. The Frisco ISD members of the ARD Committee determined that they needed to collect more data to determine where J.B. was having the most incidents. While Frisco ISD was fully aware of J.B.'s struggles, instead of providing him with support, they chose once again to collect data. Not surprisingly, the problems in PE and recess continued. During the ARD Committee meeting on August 10, 2018, at the parents' urging, District personnel did agree to conduct a Functional Behavior Assessment immediately, rather than on the normal 45 day timeline. On September 6, 2018, J.B. was once again improperly restrained, this time in a hallway in full view of any students or staff who happened to pass by J.B.

16.     In October, 2018, 45 days after agreeing to do so "immediately," Frisco ISD finally conducted a Functional Behavior Assessment. The findings of this assessment were consistent with those of the evaluation that had been conducted at the expense of **J..B's parents and provided to Frisco ISD over 9 months earlier.** The evaluator identified that being told no, being given a new task, being teased by others, and losing at a game as some of the triggers for J.B.'s inappropriate behaviors. Yet J.B.'s classroom teachers continually attempted to force J.B. to comply with directives through threats of consequences, all without consideration of his disability and in direct conflict with the recommendations of both behavioral assessments. Further, J.B.'s parents were not provided with a copy of the Functional Behavior Assessment when it was completed.

17.     Unfortunately, before the ARD Committee could even convene to consider the FBA, on November 2, 2018, J.B. had another incident in PE that resulted in him again being

restrained. J.B. had been noticeably agitated prior to attending PE. In PE, he was seen throwing a ball at another student and his teacher disciplined him in front of his peers. He ran from the room, which culminated in another improper restraint. Hosp personnel did not use any of the accommodations already in place to attempt to deescalate J.B.. As a result of the incident, J.B. was given the consequence of in school suspension, which, again, was completely ineffectual in addressing his behavior problems and a behavioral strategy that was not supported by either the evaluation obtained at the expense of J.B.'s parents or the Functional Behavioral Assessment conducted by Frisco ISD.

18. On November 30, 2018, J.B. became upset and began acting inappropriately shortly after arriving at school. J.B. was restrained at least twice and reported being held down on his knees by the school secretary. For approximately 30 minutes, J.B. was confined in a classroom with, at times, at least seven adults present. J.B. was not provided any instruction during the day. The day was so traumatizing to J.B. that he was fearful the secretary was going to "come after" him at home. He exhibited anxiety and depression for days after the incident. His reaction to the restraints was more severe than any of his prior restraints.

19. After two attempts at ARD Committee meetings to finalize J.B.'s IEP and put his Behavior Intervention Plan in place that were both limited to one hour due to Hosp staff conflicts, the ARD Committee was set to convene on December 6, 2018 with the goal of finishing the IEP. However, the evening before the meeting, J.B.'s classroom teacher submitted a request under Chapter 37 of the Texas Education Code to have J.B. removed from her classroom. As a result, the ARD Committee meeting began with a lengthy discussion of how to facilitate J.B.'s move to a new classroom in light of his difficulties accepting change. Ultimately, after consultation with Frisco ISD's outside counsel, the classroom teacher agreed to rescind the notice and the ARD Committee discussion returned to finalizing the IEP, including the BIP.

20. When J.B. returned to school on Friday, December 7, following the November 30, 2018 incident, he remained very easily agitated and suffered severe anxiety. On December 17, 2018, J.B. had several outbursts, including stabbing Styrofoam balls with scissors. School personnel called J.B.'s mother and encouraged her to pick J.B. up, which Mr. B. did at 1:00 p.m. On December 18, 2018, J.B. became upset and threw a game piece during a game, refused to engage in classroom activities, argued with a teacher and, during recess, began screaming at and kicking a student who pushed him down during tag. The student was his classroom teacher's son, the same classroom teacher who filed and rescinded a Chapter 37 request to have J.B. removed from her classroom. School personnel called J.B.'s mother and again encouraged her to pick J.B. up, which Mr. B. did at 1:50 p.m. Later that afternoon, J.B.'s classroom teacher once again submitted a Texas Education Code Chapter 37 request that J.B. be removed from her class. The campus determined that J.B. would be placed in another one of the third-grade classrooms – the same classroom in which J.B.'s original classroom teacher's son, the one who pushed J.B. down on the playground that day, was a student. The campus decided that J.B. would be given a "stay away" order, requiring him to stay away from the student in his new classroom.

21. By this point, it was obvious to J.B.'s parents that Frisco ISD was not capable of educating J.B., and even if it was, it had no intention of doing so in a manner in which J.B. would be safe. Frisco ISD had abdicated its duty to educate J.B. in favor of punishing him for behavior resulting directly and predictably from his disability. J.B. had been seeing his psychologist, who notified Hosp that "J.B.'s emotional and behavioral state made it increasingly difficult for him to manage his academic and social demands in the school setting." J.B. was traumatized by the mere school building, with fears of people from the school "coming after him," even to his home. On December 21, 2018, Mr. and Ms. B. sent a letter to the Hosp

Principal advising him that they intended after 10 business days to remove J.B. from Hosp and place him in a private school and seek reimbursement from Frisco ISD.

22. On January 18, 2019, the ARD Committee met to consider the withdrawal notice. Frisco ISD proposed at that meeting for the first time moving J.B. to a self-contained classroom in its SAIL program on another campus. This was nearly four years after J.B.'s parents first gave notice to Frisco ISD that by reason of a disability J.B. likely needed special accommodations in order to receive a free appropriate public education. In the program belatedly recommended by Frisco ISD, J.B. would either have lunch and recess with the general education population or be knowingly excluded from the group, which was a trigger for J.B. J.B.'s parents requested that Frisco ISD pay the tuition for J.B. to attend St. Timothy Christian School, a school dedicated to addressing students with behavioral and emotional needs. At St. Timothy, J.B. would receive intense behavioral support in an environment with very small class sizes and no group activities from which J.B. would be excluded. The meeting ended in disagreement. J.B.'s mother then visited the SAIL classroom so that she could compare it to what she had observed at St. Timothy and determine if the SAIL classroom would work for J.B. When the ARD Committee reconvened, J.B.'s mother explained that the SAIL classroom might have been right for J.B. back when his behavioral issues first began, but that his condition was so exacerbated by Frisco ISD's inaction, inappropriate action and discrimination, that he was now so traumatized by the school experience that he required the environment and structure that St. Timothy could provide. The meeting again ended in disagreement.

23. Hosp personnel failed to properly identify J.B. as a student with a disability when they should have, as early as Kindergarten. District personnel are charged with the responsibility of identifying students who are not progressing in a manner consistent with their peers and having them evaluated to see if the lack of progress and their behaviors are, perhaps, the result of

a disability. Consistently, Hosp personnel failed to have J.B. evaluated on a timely basis. Once Hosp personnel identified J.B. as a student with a disability, even then they consistently failed to properly assess and address his disability. As a result J.B. was subjected to a school environment that routinely exacerbated his emotional and behavioral disabilities and made him an object of public ridicule of his peers. Consistently, Hosp personnel failed to provide the supports and accommodations called for in J.B.'s 504 Plan and his IEPs and the evaluation secured at the full expense of his parents. J.B.'s classroom teacher and others demonstrated a lack of understanding of how to address J.B.'s disability. Frisco ISD did not put a Behavior Intervention Plan into place until it was too late for J.B. – more than two years after identifying J.B.'s behavioral struggles and more than three years after the problem was first raised by his parents. As a result, J.B. was repeatedly restrained, embarrassed in front of his peers, excluded from instruction, sent home early, and, ultimately, humiliated and traumatized. Frisco ISD failed to provide J.B. with a free appropriate public education.

## VI.
## CAUSES OF ACTION

### COUNT ONE: VIOLATION OF SECTION 504

24. Plaintiff incorporates the above numbered paragraphs as if fully set forth herein.

25. Frisco ISD is liable under Section 504 if Plaintiff can show that (1) Frisco ISD received federal financial assistance; (2) J.B. is an intended beneficiary; and (3) J.B. is a qualified handicapped person who solely by reason of his handicap has been the subject of discrimination under such program. *See Melton v. Dallas Area Rapid* Transit, 391 F.3e 669 (5th Cir. 2004).

26. Frisco ISD receives federal funds to provide a free appropriate public education to students who qualify as a child with a disability. J.B. is a child with a disability. Thus, the first two elements of a claim under Section 504 are satisfied.

27. The third element of a claim under Section 504 requires that J.B. have been discriminated against in the provision of a free appropriate public education by reason of his disability. J.B. exhibited behaviors and delays that should have caused Frisco ISD to evaluate J.B. to determine if he had a disability as early as his Kindergarten year, but certainly by first grade. Frisco ISD did not evaluate J.B. until his second grade year at which time it concluded he was a child with a disability and agreed to establish a Section 504 plan. Even after identifying J.B. as a disabled child and deciding to create a Section 504 plan, the District still failed to act until Ms. B. requested a copy of the plan she thought was in place, but had never been created. The delay violated Frisco ISD's "child find" obligations under Section 504.

28. Once Frisco ISD did establish a 504 plan, it did not conduct a Functional Behavior Assessment or provide J.B. with a Behavior Intervention Plan or any of the supports necessary to address the behavior struggles that he was clearly having and were depriving him of a free appropriate public education. Ultimately, the delay in positively addressing his behavioral struggles led to him being unable to attend Hosp, as admitted by Frisco ISD.

29. At no time did Frisco ISD offer reasonable accommodations to J.B. that would have in reasonable probability provided J.B. with access to the free appropriate public education to which J.B. was entitled under Federal Law. The threat of issuance of a "stay away" order to J.B. upon transferring him into a classroom where he would be in close proximity to a student who had previously bullied him was in retaliation of J.B.'s disability, denied J.B. the free appropriate public education to which he was entitled. Such constituted unlawful discrimination. Properly accommodated, J.B. has done well at St. Timothy Christian Academy and his conduct is significantly improved.

30. Frisco ISD discriminated against J.B. in violation of Section 504 by not timely addressing his behavioral struggles, denying him a free appropriate public education. Plaintiff

requests that as a result of the Section 504 violations (child find and denial of a free appropriate public education) that Frisco ISD be ordered to pay J.B.'s private school tuition for the second half of the 2018-2019 school year and all of the 2019-2020 and 2020-2021 school years. Plaintiff's hope that at this natural break between elementary school and middle school, J.B. will be able to regain some self-esteem and return to a public school and will have overcome the trauma he currently associates with his years at Hosp.

31. Plaintiff is entitled to recover reasonable attorneys' fees under Section 504 (29 U S.C. § 794a(b)).

### COUNT TWO: VIOLATION OF THE IDEA – DENIAL OF FREE APPROPRIATE PUBLIC EDUCATION

32. Plaintiff incorporates the above numbered paragraphs as if fully set forth herein.

33. "Under the IDEA, a federal district court's review of a state hearing officer's decision is 'virtually de novo.'" *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003). "The district court must receive the state administrative record and must receive additional evidence at the request of either party." *Id.* "The court must reach an independent decision based on a preponderance of the evidence." *Houston Indep. Sch. Dist. v. Bobby R.*, F.3d 341, 347 (5th Cir. 2000). In this case, the SEHO made a series of errors in the Decision, which Plaintiff requests this Court to correct.

34. The SEHO erred when the SEHO found in paragraph 6 of the Decision that J.B.'s parents declined to provide consent for Frisco ISD to perform a Full and Individual Evaluation because they preferred to obtain a private evaluation. J.B.'s parents were not made aware by Frisco ISD that the District could perform the evaluation. As a result, they obtained a private evaluation at their expense.

35. The SEHO erred when the SEHO found in paragraph 12 of the Decision that J.B.'s behaviors improved due to a medication change. J.B. continued to experience behavior problems throughout second grade, which struggles were exacerbated by his reaction to the restraint that occurred on February 27, 2018.

36. The SEHO erred in paragraphs 27, 29, 34, 41 and 52 of the Decision by not recognizing that the medication changes for J.B. were the result of the trauma he experienced at Hosp when being restrained and humiliated. The SEHO's reliance on medication changes as the impetus for J.B.'s behavior problems was incorrect and not supported by the evidence. Medication changes do not relieve Frisco ISD of its duty to provide J.B. with a free appropriate public education.

37. The SEHO erred when in paragraph 31 of the Decision by failing to include that J.B. was humiliated by the "room clears" and they exacerbated his behavior problems by embarrassing him in front of his peers. They were a completely ineffective way of dealing with J.B.'s emotional outbursts.

38. The SEHO erred when the SEHO failed to find in paragraph 32 of the Decision that Frisco ISD was delinquent in completing the FBA, which they promised on August 10, 2018 to complete "immediately' and by not including that the FBA was not provided to J.B.'s parents until October 31, 2018.

39. The SEHO erred when the SEHO failed in paragraph 39 of the Decision to make clear that the time limitations on the November 7 and 13 ARD Committee meetings were because of time limitations of the Frisco ISD members of the Committee. J.B.'s parents were available for as long as required.

40. The SEHO erred when the SEHO failed in paragraph 55 of the Decision to make clear that that the January 18, 2018 ARD Committee meeting was requested by Frisco ISD for the

purpose of considering J.B.'s parents request that Frisco ISD change J.B.'s placement to a private school that could provide Applied Behavior Analysis therapy and full time support for J.B. to allow him to return to an educational setting despite the trauma he suffered at Hosp. Only in response to the withdrawal notice did Frisco ISD ever offer to place J.B. in the SAIL classroom – only at that point deciding that his existing IEP that was only a couple weeks old was unworkable.

41. The SEHO erred when the SHEO found in paragraph 69 of the Decision that school personnel met with J.B;'s mother and advocate "every other week during the school year." That is incorrect and inconsistent with the evidence, which was that those meetings occurred only for the first few weeks of J.B.'s third grade year.

42. The SEHO erred when the SEHO found in paragraph 71 of the Decision that J.B. had a one-on-one aide as needed provided by his parents. That is incorrect and inconsistent with the evidence, which was that once at St. Timothy, J.B. did not require a one-on-one aide provided by his parents.

43. The SEHO erred in Conclusions of Law, paragraph 1 of the Decision, when the SEHO found that Frisco ISD provided free appropriate public education to J.B. and that his IEP was reasonably calculated to address his needs in light of his unique circumstances. The IEP never included a Behavior Intervention Plan until December 6, 2018 and J.B. only attended Hosp for a few days before Frisco ISD concluded that IEP was not sufficient and proposed replacing it with an IEP that placed J.B. in a self-contained classroom on another campus with very different instructional methods and services. The IEPs in place from April 2018 to December 2018 that lacked a Behavior Intervention Plan, Applied Behavior Analysis therapy and appropriate other services to address J.B.'s behavioral problems were not reasonably calculated to address J.B.'s needs in light of his unique circumstances and instead, failed him completely.

44. Plaintiff is also entitled to recover his reasonable attorneys' fees under the IDEA.

## V.
## JURY DEMAND

45. Plaintiff demands a trial by jury on his claim for violation of Section 504.

## VI.
## PRAYER

Plaintiff requests that the Court award the following relief against Defendant as may be appropriate:

(1) An award of the cost of J.B.'s tuition at St. Timothy Christian Academy for the second half of the 2018-19 school year and all of the 2019-20 and 2020-21 school years, plus interest as appropriate;

(2) An award of the costs of transportation from J.B.'s home to St. Timothy Christian Academy for the same period of time as the Court awards tuition, plus interest as appropriate;

(3) A finding that Frisco ISD failed to timely identify J.B. as a student with a disability in need of a behavior intervention plan under Section 504 of the Rehabilitation Act;

(4) A finding that Frisco ISD deprived J.B. of a free appropriate public education under both the IDEA and Section 504 of the Rehabilitation Act;

(5) Attorneys' fees;

(6) Costs of court; and

(7) All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

*[signature]*

Roy T. Atwood, P.C.
Texas State Bar No. 01428040

**ATWOOD GAMEROS, L.L.P.**
6116 N. Central Expressway, Suite 1400
Dallas, Texas   75206
Telephone:   (214) 559-7399
Facsimile:   (214) 481-5502
E-mail:   royatwood@atwoodgameros.com

**SIEBMAN FORREST BURG
  & SMITH, LLP**
Federal Courthouse Square
300 N. Travis
Sherman, TX  75090
(903) 870-0070
(903) 870-0066 Telefax
Clyde M. Siebman
Texas State Bar #18341600
clydesiebman@siebman.com
Anna Rebecca Skupin
Texas Bar No. 24084272
beccaskupin@siebman.com


By: /s/ Clyde M. Siebman
      Clyde M. Siebman